**EL CHICO RESTAURANTS, INC.**, individually and as representative of a class of all other persons similarly situated, Plaintiff,

v.

The **AETNA CASUALTY AND SURETY COMPANY**, et al., individually and as representatives of a class of all other persons similarly situated, Defendants.

No. CIV. 197–027.

United States District Court, S.D. Georgia, Augusta Division.

Oct. 15, 1997.

John Chapman Bell, Jr., Bell & James, Augusta, GA, Richard Henry Weiss, Elaine Kusel, Milberg, Weiss, Bershad, Hynes & Lerach, LLP, New York, NY, Fred Misko, Jr., Charles E. Ames, Law Office of Fred Misko, Jr., Dallas, TX, Michael C. Dodge, Dodge & Associates, P.C., Dallas, TX, for Plaintiff.

Thomas William Tucker, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Joseph E. Coughlin, Rowe W. Snider, Lord, Bissell & Brook, Chicago, IL, for Defendants Aetna Cas. and Ins. Co., Standard Fire Ins. Co.

Thomas William Tucker, Dye, Tucker, Everitt, Wheale & Long, Augusta, GA, Michael L. McCluggage, Michael R. Blankshain, Leland H. Chait, Richard Jonathon Street, Wildman, Harrold, Allen & Dixon, Chicago, IL, for Defendants American Nat. Fire Ins. Co., Continental Cas., Transcontinental Ins. Co., Transp. Ins. Co.

Patrick J. Rice, Hull, Towill, Norman & Barrett, Augusta, GA, Michael Lowenberg, P.C., Kelly A. Rittenberry, Akin, Gump, Strauss, Hauer & Feld, LLP, Dallas, TX, for Defendants Argonaut Ins. Co., Argonaut Southwest Ins. Co.

Jerome L. Kaplan, Arnall, Golden & Gregory, Macon, GA, Karen B. Bragman, Arnall, Golden & Gregory, LLP, Atlanta, GA, Lyman G. Hughes, Barry R. Bell, Carrington, Coleman, Sloman & Blumenthal, LLP, Dallas, TX, for Defendants Cigna Ins. Co., Cigna Property and Cas. Ins. Co., Ins. Co. of North America, Pacific Employers Ins. Co.

Patrick J. Rice, Richard N. Carrell, William R. Pakalka, John E. Chapoton, Jr., Fulbright & Jaworski, LLP, Houston, TX, for City Ins. Co., Home Indem. Co., Home Ins. Co., Home Ins. Co. of Indiana.

Tony G. Powers, Rogers & Hardin, Atlanta, GA, David J. Healey, Stephen L. Lundwall, Robert B. Lytle, Arnold, White & Durkee, Houston, TX, for Defendant Hartford Ins. Co.

Patrick J. Rice, Fulbright & Jaworski, LLP, Houston, TX, Robert C. Walters, Russell Yager, Brian E. Robison, Vinson & Elkins, Dallas, TX, for Defendants Liberty Ins. Corp., Liberty Mut. Fire Ins. Co., Liberty Mut. Ins. Co.

William H. Stanhope, Thomas J. Gallo, Robins, Kaplan, Miller & Ciresi, Atlanta, GA, for Defendants Nationwide Mut. Ins. Co., Nationwide Property and Cas. Ins. Co., Wausau Ins. Co.

David E. Hudson, Patrick J. Rice, Hull, Towill, Norman & Barrett, Augusta, GA, Jeffrey J. Cox, Robert W. Jordan, Mary L. Scott, Van H. Beckwith, Baker & Botts, LLP, Dallas, TX, for Defendants Planet Ins. Co., Reliance Ins. Co., Reliance Nat. Ins. Co.

Mary L. Skelton, Lane & Crowe, Brunswick, GA, J. Hampton Skelton, Skelton & Woody, Austin, TX, for Defendant St. Paul Mercury Ins. Co., St. Paul Fire and Marine Ins. Co.

Donald A. Loft, Lewis E. Hassett, Morris, Manning & Martin, LLP, Atlanta, GA, Guy C. Quinlan, Rogers & Wells, New York, NY, for Defendant Nat. Council on Compensation Ins., Inc.

## ORDER

BOWEN, District Judge.

Two motions are currently pending before the Court in the above-captioned case: Plaintiff's Motion to Remand and Plaintiff's Motion for Leave to Add Parties and to Serve an Amended Complaint. For the reasons set forth below, Plaintiff's Motion to Remand is **DENIED** and Plaintiff's Motion for Leave to Add Parties and to Serve an Amended Complaint is **GRANTED**. Furthermore, because Plaintiff's Complaint as amended asserts claims against non-diverse Defendants, this Court no longer has subject matter jurisdiction over this case and therefore must **REMAND** it to the Superior Court of Richmond County, Georgia, pursuant to 28 U.S.C. § 1447(e).

## I.  BACKGROUND

On January 10, 1997, El Chico Restaurants, Inc. (Plaintiff), a Texas corporation with its principal place of business in Dallas, Texas, filed this class action lawsuit in the Superior Court of Richmond County, Georgia, on behalf of itself and all persons who purchased retrospectively rated workers' compensation insurance policies covering risks in the state of Georgia from January 1, 1987, through the time of filing. Plaintiff named thirty insurance companies as Defendants in the action, suing them both in their individual capacities and as representatives of a defendant class under O.C.G.A. § 9-11-23.

Plaintiff contends that the Defendants conspired to, and did in fact, charge illegally high rates for these insurance policies. Plaintiff asserts claims under Georgia law for breach of contract, negligent misrepresentation, civil conspiracy, and unjust enrichment, as well as claims arising from alleged violations of O.C.G.A. § 33-9-4 (excessive insurance rates), O.C.G.A. § 23-2-52 (misrepresentation as legal fraud), O.C.G.A. § 33-9-37 (conspiracy to fix insurance rates), O.C.G.A. § 10-1-372 (deceptive trade practices), and O.C.G.A. § 16-14-1 (RICO). Plaintiff seeks statutory, compensatory, and punitive damages, various items of equitable relief, and of course costs and attorneys' fees.

In addition, Plaintiff named as a Defendant the National Council on Compensation, Inc. (NCCI), a licensed rate service organization allegedly controlled by the Defendant insur-

ance companies, which Plaintiff contends acted as a conduit for the insurer Defendants to coordinate and effect their alleged wrongful conduct. Plaintiff asserts the same claims against NCCS as it asserts against the insurance company Defendants, with the exception of its claims for breach of contract and unjust enrichment.

On February 6, 1997, Defendants removed the case to this Court, claiming that the Court has removal jurisdiction because it could have exercised original jurisdiction under the diversity of citizenship provision, 28 U.S.C. § 1332. On March 10, 1997, Plaintiff filed a Motion to Remand the case pursuant to 28 U.S.C. § 1447(c), asserting that removal is improper because complete diversity does not exist and that in any event, removal is barred by the no-local-defendant rule of 28 U.S.C. § 1441(b). On June 17, 1997, Plaintiff filed a Motion for Leave to Add Parties and to Serve an Amended Complaint (Motion to Amend), in which Plaintiff seeks (1) to name five additional Plaintiffs and over one hundred additional Defendants, (2) to eliminate allegations relating to a defendant class, and (3) to clarify the allegations in its Complaint. The Court held a hearing on both of Plaintiff's motions on July 28, 1997.

Plaintiff has at times blurred the distinctions between its two motions, arguing that the Court should grant its Motion to Remand because its Complaint as amended will name non-diverse parties.[1] Unfortunately, the Court's task is not so simple. Before ruling on Plaintiff's Motion to Amend, the Court first must consider Plaintiff's Motion to Remand; for if the Court remands the case because complete diversity is lacking, the Court necessarily lacks subject matter jurisdiction over Plaintiff's Motion to Amend. *See Memphis Am. Fed'n of Teachers v. Board of Educ.*, 534 F.2d 699, 701 (6th Cir. 1976) ("Without a finding that there is federal jurisdiction over a particular claim for

relief the federal courts are without power to proceed.") (citing *Ex Parte McCardle*, 74 U.S. (7 Wall.) 506, 514, 19 L.Ed. 264 (1868)); *cf. Pullman Co. v. Jenkins*, 305 U.S. 534, 537, 59 S.Ct. 347, 348–49, 83 L.Ed. 334 (1939) (holding that amended complaint should not have been considered in determining defendant's right to remove because "the right to remove ... [is] to be determined according to the plaintiffs' pleading at the time of the petition for removal"). Thus, the Court now turns to consider Plaintiff's Motion to Remand.

## II. MOTION TO REMAND

Under 28 U.S.C. § 1441(a), a defendant in a case originally filed in state court may remove the case to federal district court if the district court could have exercised original jurisdiction in the case. Under 28 U.S.C. § 1447(c), however, the case must be remanded to state court "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." Defendants claim that the Court has removal jurisdiction in this case because it could have exercised original jurisdiction under the diversity of citizenship provision, 28 U.S.C. § 1332.

Plaintiff, however, argues that the case must be remanded for two reasons. First, Plaintiff asserts that complete diversity does not exist because Defendant CIGNA of Texas f/k/a INA of Texas (CIGNA of Texas) is, like Plaintiff El Chico, a citizen of Texas for diversity purposes. Second, Plaintiff claims that even if complete diversity exists, removal is barred by the no-local-defendant rule of 28 U.S.C. § 1441(b) because Defendant Home Indemnity Company maintains its principal place of business in Georgia. Defendants, on the other hand, contend that Plaintiff fraudulently[2] joined CIGNA of Texas solely to destroy complete diversity, and

---

[1]. For example, Plaintiff asserts in its Response to Defendants' Post–Hearing Supplemental Brief that "[i]f the Court permits plaintiff's proposed amendment ... remand will be required and it will not be necessary for the Court to resolve the legal and factual issues raised by the motion to remand." (Plaintiff's Response at 1 n. 1).

[2]. It should be emphasized that "fraudulent" as used in this context is a term of art used to indicate that no possible basis exists for a cause of action against the resident defendant, and is in no way meant to reflect upon the integrity of Plaintiff or its counsel. *Newman v. Forward Lands, Inc.*, 418 F.Supp. 134, 136 n. 1 (E.D.Pa. 1976).

therefore the Court must disregard CIGNA of Texas in determining whether diversity of citizenship exists. Furthermore, Defendants argue that Home Indemnity's principal place of business is New York, not Georgia, and thus removal is not barred by the second sentence of § 1441(b).

## A. Fraudulent Joinder

Section 1332(a) imposes two requirements for diversity jurisdiction: (1) the amount in controversy must exceed $75,000, exclusive of interest and costs; and (2) the parties must be of diverse citizenship. Plaintiff apparently does not challenge Defendants' assertion that the amount in controversy exceeds $75,-000. Indeed, although no specific dollar amount is prayed for in the Complaint, it readily appears that the legal and equitable relief sought by Plaintiff exceeds the jurisdictional minimum. Therefore, the primary issue is whether the parties are of diverse citizenship.

■ It is well established that all plaintiffs must be diverse from all defendants in order to satisfy § 1332(a). *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187, 110 S.Ct. 1015, 1017, 108 L.Ed.2d 157 (1990). In a class action, this requirement of complete diversity applies only to the named plaintiffs and the named defendants. *Snyder v. Harris*, 394 U.S. 332, 340, 89 S.Ct. 1053, 1058–59, 22 L.Ed.2d 319 (1969). Furthermore, when removal is predicated upon diversity jurisdiction, the court must determine the citizenship of the parties at the time the case is removed. *Pullman*, 305 U.S. at 537, 59 S.Ct. at 348–49; *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir. 1989). Therefore, the citizenship of the parties named in Plaintiff's Complaint controls whether this case is properly removable.

The Supreme Court has long recognized that a defendant's "right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97, 42 S.Ct. 35, 37, 66 L.Ed. 144 (1921). The Eleventh Circuit recently articulated its fraudulent joinder test as follows:

In a removal case alleging fraudulent joinder, the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.

*Crowe*, 113 F.3d at 1538 (citing *Cabalceta*, 883 F.2d at 1561).

■ The removing party must show by clear and convincing evidence that the resident defendant was fraudulently joined. *Parks v. New York Times Co.*, 308 F.2d 474, 478 (5th Cir.1962). This burden has been described as a "heavy one." *Crowe*, 113 F.3d at 1538 (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. Unit A 1981)). Indeed, the district court must evaluate the parties' factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in the plaintiff's favor. *Id.* "If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." *Id.* (quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440–41 (11th Cir.1983)). In making this determination, the court must evaluate the plaintiff's allegations as stated in the complaint at the time of removal; however, the court may also consider any affidavits and deposition transcripts submitted by the parties. *Id.*

Although the court may consider this additional evidence, however, the Eleventh Circuit in *Crowe* strongly cautioned against adjudicating the merits of the controversy on a motion to remand:

For a Plaintiff to present an arguable claim against an in-state defendant and, therefore, to require a case removed. to federal court to be remanded to state court, the plaintiff need not show that he could survive in the district court a motion for summary judgment filed by that in-state defendant. For a remand, the plaintiff's burden is much lighter than that: after drawing all reasonable inferences

from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be "a reasonable basis for predicting that the state law *might* impose liability on the facts involved." *B., Inc.*, 663 F.2d at 550 (quoting *Bobby Jones Garden Apartments [v. Suleski]*, 391 F.2d [172] at 177 [(5th Cir.1968)]). (emphasis added). Because the procedures are similar while the substantive standards are very different, district courts must exercise extraordinary care to avoid jumbling up motions for remand and motions for summary judgment that come before them.

In the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for obviously fraudulent or frivolous claims.

*Crowe,* 113 F.3d at 1541–42.

■ Thus, in this case the Court must proceed carefully in evaluating the Defendants' claim of fraudulent joinder. The Court may pierce the Plaintiff's pleadings and consider other material[3] submitted by the parties, but it may consider this additional material only insofar as it shows whether Plaintiff has at least an arguable claim against CIGNA of Texas under Georgia law. Nevertheless, I conclude that the Defendants have sustained their weighty burden of establishing that CIGNA of Texas was fraudulently joined, as they have shown that Plaintiff cannot possibly sustain its asserted claims against CIGNA of Texas.

Plaintiff's Complaint essentially alleges that the Defendants engaged in two types of harmful conduct: (1) charging excessive premiums on retrospectively rated workers' compensation insurance policies (policies) covering risks within the state of Georgia, and (2) conspiring to charge illegally high rates on these policies. Defendants contend, however, that CIGNA of Texas never issued any policies covering risks in Georgia, and that Plaintiff's conspiracy allegations are insufficient: to establish a claim against CIGNA Texas. Therefore, according to Defendants, Plaintiff could not possibly prevail against CIGNA of Texas on any of its state-law claims.

Defendants submitted the affidavit of Sandra Doherty, an employee of CIGNA of Texas, in which she declares that CIGNA of Texas has never issued any policies covering risks in Georgia. In response to this affidavit, Plaintiff points to a list of policies that it claims represents policies issued by CIGNA of Texas covering Georgia risks. (Plaintiff's Memorandum in Support of Motion to Remand at 8–14). Plaintiff supports each item on this list by referring to two documents: (1) a "Texas Notice of Election of Retrospective Rating Plan" for a policy issued by CIGNA of Texas to a particular insured; and (2) an "Application for Approval of Proposed Retrospective Rating Values," which shows the Georgia portion of a multistate policy issued by "CIGNA Property and Casualty Cos." to the same insured.

---

**3.** While it is not an issue in this case, I note that recent decisions have not been entirely clear as to what evidentiary strictures, if any, bind a district court when considering allegations of fraudulent joinder. Rule 56(e) specifies that in a motion for summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, [and] shall set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). The Rules contain no such requirement with respect to a motion to remand, however, and this Court has stated that "[w]here a claim of fraudulent joinder is asserted Federal courts may pierce the pleadings and consider the entire record, determining the question by any means available." *Williams v. Atlantic Coast Line R.R. Co.,* 294 F.Supp. 815, 816 (S.D.Ga.1968) (citing *Dodd v. Fawcett Publications, Inc.,* 329 F.2d 82, 85 (10th Cir.1964)); *see also* 32A Am.Jur.2d *Federal Courts* § 1630 (1995) ("When the issue of fraudulent joinder is raised, a court may look to the entire record and any means available to determine the propriety of the joinder.").

Applying Rule 56(e) in the context of a motion to remand would seem to further confuse the standards governing removal and remand with the standards governing summary judgment. Indeed, in moving to remand a case the plaintiff essentially questions the district court's subject matter jurisdiction; thus, the court may "view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists." *Capitol Leasing Co. v. F.D.I.C.,* 999 F.2d 188, 191 (7th Cir.1993) (quoting *Grafon Corp. v. Hausermann,* 602 F.2d 781, 783 (7th Cir.1979)). Accordingly, I conclude that a court may consider any evidence that has been submitted by the parties to evaluate a claim of fraudulent joinder.

These documents, however, do not support the inference that Plaintiff purports to draw from them. They provide no evidence to contradict the affidavit of Ms. Doherty, as Plaintiff nowhere indicates that the policies referred to in the Applications for Approval (which provide Georgia coverage) are the same policies referred to in the Notices of Election (which were issued by CIGNA of Texas). In other words, Plaintiff has put forth no evidence from which it may be inferred that CIGNA of Texas issued policies covering Georgia risks.

Moreover, Defendant also submitted the affidavit of John J. Groody, Secretary of the Insurance Company of North America, in which he states that the policies identified by Plaintiff as providing Georgia coverage were in fact issued by CIGNA companies other than CIGNA of Texas, and he identifies which company provided Georgia coverage on each of these policies. (Groody Affidavit at 2–5). Plaintiff has provided no evidence contradicting these declarations. Thus, I find that CIGNA of Texas never issued policies covering Georgia risks, and I therefore conclude that there is no possibility Plaintiff can prevail against CIGNA of Texas on its claims arising from the sale of such policies.[4]

Similarly, Defendants have shown that Plaintiff cannot prevail against CIGNA of Texas on its conspiracy claims. Plaintiff alleges in its Complaint that the Defendant insurance companies engaged in a conspiracy to charge unlawfully high rates on policies covering Georgia risks. Plaintiff contends that CIGNA of Texas is jointly and severally liable as a co-conspirator under Georgia law because it and the other insurer Defendants allegedly "used policy forms and charged rates of premium that were not approved by the [Georgia Insurance] Commissioner." (Complaint ¶ 36). Furthermore, Plaintiff asserts that the insurer Defendants effected this alleged scheme "through and with the assistance and cooperation of the NCCI which, among other things, filed policy forms and provisions with the Commissioner ...

that misstated the premiums actually being charged in the State" and acted to conceal the alleged scheme from the Commissioner. (*Id.* ¶ 38).

■■■ It is true, as Plaintiff argues, that under Georgia law the liability of co-conspirators is joint and several. *Cook v. Robinson,* 216 Ga. 328, 329, 116 S.E.2d 742 (1960); *see also Savannah College of Art & Design, Inc. v. School of Visual Arts of Savannah, Inc.,* 219 Ga.App. 296, 296, 464 S.E.2d 895 (1995). It is also true that "the conspiracy of itself furnishes no cause of action. The gist of the action ... is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage." *Cook,* 216 Ga. at 329, 116 S.E.2d 742 (citations omitted). Thus, so long as Plaintiff has alleged a viable cause of action, "the fact of conspiracy, if proved, makes any actionable deed by one of the conspirators chargeable to all." *Id.*

Plaintiff asserts numerous causes of action in its Complaint upon which joint and several liability may be imposed on any proven conspirators. Nevertheless, Defendants have shown that CIGNA of Texas could not be liable under Georgia law for the alleged conspiracy.

Again, in evaluating whether there is any possibility that Plaintiff may recover against CIGNA of Texas, the Court must look to the allegations in Plaintiff's Complaint at the time of removal. *Crowe,* 113 F.3d at 1538. Although Georgia courts afford plaintiffs "great latitude in setting out in the complaint the particular act upon which the conspiracy is to be inferred," *Cook,* 216 Ga. at 329–30, 116 S.E.2d 742 (citations omitted), Plaintiff has not alleged sufficient facts in its Complaint, nor has it presented any evidence, from which it may be inferred that CIGNA of Texas was part of the alleged conspiracy to charge illegally high rates on policies covering Georgia risks.

■■■ Under Georgia law, "[t]he essential element of the [conspiracy] charge is the

---

4. Plaintiff also asserts that CIGNA of Texas "negotiated and signed illegal 'Side Agreements'" that imposed illegal charges in several states, including Georgia. (Plaintiff's Reply Memorandum at 9). The supporting documents, however, provide no evidence from which it may be inferred that CIGNA of Texas itself entered into any such agreements imposing illegal charges in Georgia.

common design." *Id.* at 330, 116 S.E.2d 742 (citations omitted). The conspiracy allegations in Plaintiff's Complaint, however, relate solely to the issuance of policies covering Georgia risks. Defendants have shown that. CIGNA of Texas did not issue any such policies, and Ms. Doherty states in her affidavit that CIGNA of Texas has never been licensed to sell insurance in Georgia. (Doherty Affidavit at 1). Although Plaintiff alleges in its Complaint that CIGNA of Texas is licensed to transact insurance business in Georgia, Plaintiff has made no attempt to contradict Ms. Doherty's affidavit. It is difficult to conceive that an insurance company that does not sell insurance in Georgia[5] would enter into a scheme to charge illegally high rates on Georgia policies. Indeed, holding CIGNA of Texas liable in this situation would stretch the concept of civil conspiracy beyond all recognition. Thus, I conclude that there is no possibility Plaintiff could prevail against CIGNA of Texas on its conspiracy claims.[6]

On a final note, Plaintiff argues at length in its Reply Memorandum that even if CIGNA of Texas did not issue policies covering Georgia risks, it may be held liable for policies issued by other CIGNA companies on an alter-ego theory of liability. While this certainly presents an interesting argument, the Court may consider only the allegations supported by Plaintiff's Complaint at the time of removal. *Pullman,* 305 U.S. at 537, 59 S.Ct. at 348–49; *Crowe,* 113 F.3d at 1538; *Cabalce-*

ta, 883 F.2d at 1561. Even under the liberal standards of notice pleading, Fed.R.Civ.P. 8(a); O.C.G.A. § 9–11–8(a)(2)(A), Plaintiff cannot contend that its Complaint alleges that CIGNA of Texas may be held liable as the alter ego of other CIGNA companies.[7] Therefore, the Court need not consider Plaintiff's alter-ego arguments.

**B.** *No-Local-Defendant Rule*

■ Plaintiff's second major argument in favor of remand is that removal is barred because Defendant Home Indemnity Company is a citizen of Georgia for diversity purposes. When removal is predicated upon diversity jurisdiction, 28 U.S.C. § 1441(b) provides that the case "shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." In other words, the case is not removable if any properly named defendant is a citizen of the forum state. *Cabalceta,* 883 F.2d at 1561.

■ For diversity of citizenship purposes, a corporation is deemed to be a citizen of both the state where it is incorporated and the state where it maintains its principal place of business. 28 U.S.C. § 1332(c) (1994). A corporation can have only one principal place of business, *J.A. Olson Co. v. City of Winona,* 818 F.2d 401, 406 (5th Cir. 1987), and its location must be determined by examining the "total activity" of the corpora-

5. Plaintiff makes no allegation that CIGNA of Texas sold insurance in Georgia without a license. Therefore, on the record before the Court, I find that CIGNA of Texas did not sell insurance in Georgia.

6. Plaintiff also named "St. Paul Insurance Company" as a Defendant in this action. Plaintiff apparently does not contest Defendant's claims that no entity exists by this exact name, and Plaintiff makes no attempt to argue that the citizenship of this Defendant defeats the Court's jurisdiction. Nevertheless, because the Court must examine the propriety of removal as a threshold matter even if the issue is not raised by the parties, *American Policyholders Ins. Co. v. Nyacol Prods., Inc.,* 989 F.2d 1256, 1258–59 (1st Cir.1993), the Court will briefly address whether the presence of this Defendant destroys complete diversity.

Defendants submitted the affidavit of Edward M. Gerber, Assistant Secretary of The St. Paul

Companies, Inc., in which he states that *"The* St. Paul Insurance Company" is a Texas corporation. Even assuming that Plaintiff sufficiently named this company in its Complaint, I conclude that this Defendant was fraudulently joined. Mr. Gerber declares that The St. Paul Insurance Company has never been licensed to sell insurance in Georgia and has never issued or sold any policies providing Georgia coverage. Plaintiff makes no attempt to respond to this affidavit. Therefore, Defendant St. Paul Insurance Company must be disregarded for diversity purposes for the same reasons as Defendant CIGNA of Texas.

7. Plaintiff does allege that Defendant NCCI is liable on an alter-ego theory. (Complaint ¶¶ 25–26). However, these allegations are insufficient to give notice of an alter-ego claim against CIGNA of Texas based on its relationship with other CIGNA companies.

tion. *Vareka Invs., N.V. v. American Inv., Properties, Inc.*, 724 F.2d 907, 910 (11th Cir. 1984). This total-activity analysis incorporates both the "place of activities" test and the "nerve center" test. *Id.* In undertaking this analysis, the court should keep in mind the following:

> [The] determination of the principal place of business begins with the general rules of these component tests: (1) when considering a corporation whose operations are far flung, the sole nerve center of that corporation is more significant in determining principal place of business; (2) when a corporation has its sole operation in one state and executive offices in another, the place of activity is regarded as more important; but (3) when the activity of a corporation is passive and the "brain" of the corporation is in another state, the situs of the corporation's "brain" is given greater significance.

*McLendon v. Georgia Kaolin Co.*, 822 F.Supp. 1580, 1581 (M.D.Ga.1993) (quoting *J.A. Olson Co.*, 818 F.2d at 409).

Plaintiff claims that Home Indemnity maintains its principal place of business in Georgia because a computer printout from the "Information America Network—Georgia" shows the company's "Principal Address" as being in Atlanta, Georgia. Defendants, however, submitted the affidavit of Karen L. Bennett, an Assistant Vice President of Home Insurance Company, in which she states that Home Indemnity Company was merged into Home Insurance Company in 1995. (Bennett Affidavit at 1).

■ When one corporation is merged into another the citizenship of the survivor corporation governs for diversity purposes. *See Hoefferle Truck Sales, Inc. v. Divco–Wayne Corp.*, 523 F.2d 543, 548–49 (7th Cir. 1975); 32A Am.Jur.2d *Federal Courts* § 789 (1995) This is consistent with the established rule that the citizenship of the parties at the time of removal governs whether diversity exists. *Pullman*, 305 U.S. at 537, 59 S.Ct. at 348–49. Thus, for purposes of determining the propriety of removal in this case, the Court looks to the citizenship of Home Insurance Company at the time of removal. However, the Court need not determine where

Home Insurance Company's principal place of business is located; the Court need only decide that its principal place of business is in a state other than Georgia. *See United Nuclear Corp. v. Moki Oil & Rare Metals Co.*, 364 F.2d 568, 572 (10th Cir.1966).

■ Ms. Bennett declares in her affidavit that at the time of removal Home Insurance Company was (and still is) incorporated in New Hampshire and that it maintains its principal place of business in New York. (Bennett Affidavit at 1). Furthermore, she declares that the company is licensed in forty-eight states, that only two percent of its officers reside in Georgia, and that the company's Georgia reserves account for only 0.04% of its total reserves. (*Id.* at 2). Plaintiff, on the other hand, has put forth no evidence other than the ambiguous computer printout which purportedly shows Home Indemnity's "Principal Address" in Georgia. Moreover, Plaintiff has made no attempt to respond to or contradict Ms. Bennett's affidavit. Therefore, I find that Home Insurance Company's principal place of business is not in Georgia, and thus removal is not barred by the no-local-defendant rule of § 1441(b).

### III. MOTION TO AMEND

In its second motion, Plaintiff seeks the Court's permission to amend its Complaint in three ways: (1) to name five additional Plaintiffs and over one hundred additional Defendants, (2) to eliminate the allegations of a Defendant class, and (3) to clarify the allegations in its Complaint. It is apparently uncontested that Plaintiff's Complaint as amended asserts claims against non-diverse Defendants, thereby requiring remand under 28 U.S.C. § 1447(e). Not surprisingly, therefore, Defendants argue that the Court should deny Plaintiff's Motion to Amend because its sole motive is to destroy diversity and effectuate a remand to state court.

■ Rule 15(a) provides that a party may amend its pleadings "once as a matter of course at any time before a responsive pleading is served," but that "[o]therwise a party may amend [it]s pleading only by leave of court or by written consent of the adverse

party; and leave shall be freely given when justice so requires." Although Defendants have not yet filed an answer in this case, Plaintiff cannot amend its Complaint "as a matter of course" under Rule 15(a) to name additional parties whose presence will destroy complete diversity. *Winner's Circle of Las Vegas, Inc. v. AMI Franchising, Inc.*, 916 F.Supp. 1024, 1026 (D.Nev.1996). Therefore, the Court first will evaluate whether Plaintiff may amend its Complaint to name additional Plaintiffs, and then will proceed to examine whether Plaintiff may name additional Defendants.[8]

### A. *Naming Additional Plaintiffs*

Rule 20(a) provides a flexible standard for the permissive joinder of plaintiffs, allowing all persons to join "if they assert any right to relief ... in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all these persons will arise in the action." The five parties sought to be named by Plaintiff as additional Plaintiffs are proper parties under Rule 20, as they each claim to have purchased retrospectively rated workers' compensation policies covering Georgia risks from one or more of the insurer Defendants.

Defendants argue that the Court should not allow amendment because (1) the additional Plaintiffs will destroy diversity, and (2) the non-diverse Plaintiffs are not indispensable parties. These arguments, however, are premised on characterizing the additional Plaintiffs as intervenors under Rule 24 or as indispensable parties under Rule 19. On the contrary, Plaintiff's motion to add these Plaintiffs is governed by Rules 15 and 20, the relevant provisions of which have already been set out above.

Furthermore, even if one or more of these additional Plaintiffs are not diverse from all Defendants, the Court may exercise supplemental jurisdiction over their claims pursuant to 28 U.S.C. § 1367. Section 1367(a) provides that in any action in which a district court would have original jurisdiction, the court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The statute further specifies that this "supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a) (1994).

Section 1367(b), however, places limits on supplemental jurisdiction in diversity cases:

> (b) In any civil action of which the district courts have original jurisdiction founded solely on section 1332 of this title, the district courts shall not have supplemental jurisdiction under subsection (a) over claims by plaintiffs against persons made parties under Rule 14, 19, 20, or 24 of the Federal Rules of Civil Procedure, or over claims by persons proposed to be joined as plaintiffs under Rule 19 of such rules, or seeking to intervene. as plaintiffs under Rule 24 of such rules, when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of section 1332.

The plain language of § 1367(b) thus forbids claims by plaintiffs *against* parties joined under Rule 20, but allows claims *by* plaintiffs who have been joined under the same Rule. *See Stromberg Metal Works, Inc. v. Press Mechanical, Inc.*, 77 F.3d 928, 932 (7th Cir. 1996); *In re Abbott Labs.*, 51 F.3d 524, 528–29 (5th Cir.1995) This anomaly in § 1367(b) has been the subject of academic criticism, and the drafters of the statute themselves have admitted that it was an "oversight" that should be corrected through statutory construction. Thomas D. Rowe, Jr., et al., *Compounding or Creating Confusion About Supplemental Jurisdiction? A Reply to Professor Freer*, 40 Emory L.J. 943, 960–61 nn. 90–91 (1991); *see also* Patrick D. Murphy, *A Federal Practitioner's Guide to Supplemental Jurisdiction Under 28 U.S.C. § 1367*, 78 Marq. L.Rev. 973, 102C–21 (1995)

---

**8.** Defendants apparently do not challenge the amendments that Plaintiff wishes to make to the allegations in its Complaint. Indeed, these amendments are ones that may be made "as a matter of course" under Rule 15(a). Therefore, the Court will address only whether Plaintiff may amend its Complaint to add additional parties.

(arguing that allowing supplemental jurisdiction over claims by non-diverse Rule 20 plaintiffs "would permit Rule 20 plaintiffs to circumvent the jurisdictional requirements of § 1332").

▮ Both the Fifth and Seventh circuits, however, have found the statute unambiguous and have refused to go beyond the statutory text. *Stromberg Metal Works,* 77 F.3d at 932; *In re Abbott Labs.,* 51 F.3d at 528–29.[9] I too conclude that § 1367 is unambiguous, and I will not delve beyond the face of the statute to remedy this purported defect in the law. Thus, I conclude that under the plain language of § 1367 the Court may exercise supplemental jurisdiction over the claims of the additional, non-diverse Plaintiffs named in the amended Complaint. Accordingly, Plaintiff's motion to name the additional Plaintiffs is granted.

### B. *Naming Additional Defendants*

▮ As with the issue of joining additional plaintiffs, Rule 20(a) specifies who may be joined as defendants in a particular case:

All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action.

In this case, the proposed class of Plaintiffs consists of persons who purchased retrospectively rated workers' compensation insurance policies covering Georgia risks, and Plaintiff further alleges that each Defendant was engaged, either directly or indirectly, in writing or selling such policies. Thus, the additional Defendants sought to be joined by Plaintiff are proper parties under Rule 20.

In a removal case, however, Rules 15 and 20 must be read in conjunction with 28 U.S.C. § 1447(e), which provides that if a plaintiff seeks to join a defendant whose presence will destroy the court's subject matter jurisdiction, "the court may deny joinder, or permit joinder and remand the action to the State court." Determining whether joinder under § 1447(e) is appropriate requires the district court to balance the equities involved. *Jarriel v. General Motors Corp.,* 835 F.Supp. 639, 641 (N.D.Ga.1993). In general, "the court should balance the danger of parallel federal/state proceedings against the defendant's interest in retaining the federal forum." *Id.* (citing *Hensgens v. Deere & Co.,* 833 F.2d 1179, 1182 (5th Cir.1987)). More specifically, the court should examine the following factors:

(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction, (2) whether the plaintiff has been dilatory in asking for the amendment, (3) whether the plaintiff will be significantly injured if the amendment is not allowed, and (4) any other factors bearing on the equities.

*Jarriel,* 835 F.Supp. at 641 (citing *Hensgens,* 833 F.2d at 1182).

Applying the *Hensgens* factors to the present case, I conclude that a balance of the equities favors granting Plaintiff's motion. Defendants focus primarily upon the first factor in arguing against amendment, contending that Plaintiff's motion should be denied because its sole purpose is to destroy complete diversity. Defendants point primarily to the timing of Plaintiff's Motion to Amend, asserting that Plaintiff had knowledge of the non-diverse Defendants when it filed its original Complaint and deliberately chose not to name them as Defendants in the action.

It is true, as Defendants point out, that some courts have emphasized that the district court "should scrutinize an amendment to include a nondiverse defendant more closely than an ordinary amendment." *In re*

---

**9.** Admittedly, both of these cases dealt with the joinder of plaintiffs who by themselves did not meet the amount-in-controversy requirement of § 1332, whereas here the additional Plaintiffs do not satisfy the requirement of complete diversity. However, the language of § 1367 does not distinguish between these two requirements, and the courts drew no such distinction. *See Stromberg Metal Works,* 77 F.3d at 932 ("[I]f it is possible for the principal action to be in federal court without any jurisdictional qualms then § 1367(b) does not block adding an additional plaintiff with a closely related claim against the defendants who are already in the federal forum.").

*Norplant Contraceptive Prods. Liab. Litig.,* 898 F.Supp. 433, 435 (E.D.Tex.1995) (citing *Hensgens,* 833 F.2d at 1182). Contrary to Defendants' assertions, however, it is not apparent that Plaintiff knew of these additional Defendants at the time of filing. Furthermore, other courts have held that the timing of the plaintiff's motion is insufficient by itself to tilt this first factor in favor of the defendant. *Jarriel,* 835 F.Supp. at 642. Moreover, Plaintiff does appear to have a valid reason for naming these additional Defendants: Plaintiff is eliminating its allegations of a Defendant class, and therefore Plaintiff must name the proper Defendants. Thus, the first *Hensgens* factor does not weigh heavily, if at all, in Defendants' favor.

Second, Plaintiff has not been dilatory in seeking the proposed amendment. Although Plaintiff filed its original Complaint in state court over eight months ago, nothing of substance has been done to this point. Indeed, Defendant has yet to file its Answer, and no discovery has taken place. Therefore, the second *Hensgens* factor weighs in favor of amendment.

Third, it appears that Plaintiff will be significantly injured if it is not allowed to amend its Complaint to name the additional Defendants, as Plaintiff will then face the prospect of maintaining separate lawsuits in federal and state court. Moreover, Plaintiff's claims are based entirely on state law, and thus duplicative federal and state litigation would be a waste of Plaintiff's (not to mention judicial) resources. *See Jarriel,* 835 F.Supp. at 642. Thus, the third *Hensgens* factor weighs in Plaintiff's favor.

Finally, other considerations tilt the balance even further toward amendment. Defendants vigorously contend that allowing Plaintiff to name non-diverse Defendants will unjustly deprive it of a federal forum. Indeed, Defendants argue in their Post–Hearing Supplemental Brief that the Court should give substantial deference to the Defendants' choice of a federal forum. This argument, which in substance relates to the first *Hensgens* factor, is unpersuasive in the context of this case. The underlying purpose of removal jurisdiction is to protect nonresident defendants from the local prejudices of state courts. *See* 14A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3721, at 187 (1985). In this case, however, there is little risk of such local prejudice, as neither Plaintiff nor the proposed additional Plaintiffs are citizens of Georgia. In other words, Defendants do not need to avail themselves of the federal courts in order to secure an impartial tribunal.

In sum, I conclude that under the circumstances of this case the balance of the equities favors granting Plaintiff's Motion to add the additional Defendants. Because Plaintiff's amended Complaint names non-diverse Defendants, however, the Court must now remand the case pursuant to 28 U.S.C. § 1447(e).

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand is **DENIED** and Plaintiff's Motion for Leave to Add Parties and to Serve an Amended Complaint is **GRANTED.** Furthermore, because the Court no longer has subject matter jurisdiction in this case, the Court hereby **REMANDS** it to the Superior Court of Richmond County, Georgia, in accordance with 28 U.S.C. § 1447(e).