Steven J. FITZGERALD, Plaintiff,

v.

SEABOARD SYSTEM RAILROAD, INC., Defendant and Third-Party Plaintiff,

v.

GEORGIA PORTS AUTHORITY, Third-Party Defendant.

Civ. A. No. CV 283–120.

United States District Court,
S.D. Georgia,
Brunswick Division.

Dec. 10, 1985.

Grayson Lane, Lane & Coulter, Brunswick, Ga., for plaintiff.

Randall A. Jordan, Nightingale, Liles, Dennard & Jordan, Brunswick, Ga., for defendant and third-party plaintiff.

George Chamlee, Savannah, Ga., for third-party defendant.

## ORDER

VINING, District Judge, Sitting by Designation.

This matter is before the court upon a remand by the Court of Appeals for the Eleventh Circuit for this court to determine whether diversity jurisdiction exists. *Fitzgerald v. Seaboard System R.R.*, 760 F.2d 1249 (11th Cir.1985). Since it is unquestioned that the plaintiff is a citizen of Florida and that Seaboard is incorporated in Virginia, the question which this court must decide is whether Seaboard's principal place of business is in Florida. If it is, diversity jurisdiction would not exist, since a corporation is deemed to be a citizen of both the state wherein it is incorporated and where it has its principal place of business. 28 U.S.C. § 1332(c). Before deciding this issue, however, there are several matters which need to be addressed by this court.

■ In its opinion the Court of Appeals discussed whether sanctions under Rule 11, Federal Rules of Civil Procedure, should be imposed in this case. Although the opinion is unclear whether the Court of Appeals was reserving to itself the possibility of imposing such sanctions or whether it was leaving to this court to determine whether such sanctions should be imposed, this court hereby states that it does not feel that such sanctions are warranted, and it will not impose such sanctions.

Counsel for the plaintiff had an obligation to determine, prior to the filing of this lawsuit, where Seaboard had its principal place of business. The court feels that the plaintiff's counsel discharged this responsibility by communicating with Randall A. Jordan, an attorney who he knew had represented Seaboard on numerous occasions and would very likely be retained by Seaboard to represent in the anticipated litigation. He was informed by Mr. Jordan that it was his belief that Seaboard's principal place of business was in a state other than Florida.

Mr. Jordan has appeared before the undersigned judge on numerous occasions, and the court has found his character and ethical standards to be beyond reproach. This court believes that Mr. Jordan's representation as to Seaboard's principal place of business was made in good faith and was not made for the purpose of creating federal jurisdiction where he knew none existed. Furthermore, Seaboard's extensive activities outside of the state of Florida (despite the fact that its corporate headquarters are in Florida) provided a reasonable basis for Mr. Jordan to make his determination that Seaboard's principal place of business was in a state other than Florida. The court also notes that there is absolutely no evidence in the record, and hereby finds as a matter of fact, that there was no collusion between counsel in this case to create federal jurisdiction where it did not exist.

■ Counsel for the plaintiff argues in his brief that Seaboard should not be permitted to produce evidence on the issue of where it has its principal place of business, contending that Seaboard, since it admitted in the pretrial order that its principal place of business was in a state other than Florida, is estopped from presenting any evidence to the contrary. The plaintiff cites several cases for the proposition that once a defendant admits that a federal court has diversity jurisdiction, that defendant should then be estopped from later asserting that diversity jurisdiction did not exist. *DiFrischia v. New York Central R.R.*, 279 F.2d 141 (3d Cir.1960); *Young v. Handwork*, 179 F.2d 70 (7th Cir.1950); *Murphy v. Sun Oil Co.*, 86 F.2d 895 (5th Cir.1936); *Klee v. Pittsburgh & West Virginia Ry.*, 22 F.R.D. 252 (W.D.Pa.1958). In *Murphy*, the only one of these decisions that this court is bound to follow, the court held that a defendant would not be permitted to change his admission with respect to the fact that the subject matter in controversy was more than the jurisdictional amount. However, the court did not base its decision

on estoppel but rather on the fact that the original admission was correct. The court held that the matter in controversy was a whole tract of land (the value of which, apparently, exceeded the jurisdictional amount), not simply the ⅞ interest to which the defendant claimed title.

To the extent that the other cases cited by the plaintiff in the case *sub judice* hold that a delay in raising the subject matter jurisdiction estops a defendant from asserting lack of subject matter jurisdiction at a later date, they are clearly wrong, and the court declines to follow them. Not only is this court is bound by the holding of the Eleventh Circuit in the case *sub judice* wherein the court states, "It is axiomatic that federal jurisdiction can *never* be created by the parties," 760 F.2d at 1251, but the Supreme Court itself has clearly and unquivocably held that no action of the parties can be used to create federal jurisdiction where it does not exist.

> [N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant, *California v. LaRue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972), principles of estoppel do not apply, *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18, 71 S.Ct. 534, 541–542, 95 L.Ed. 702 (1951), and a party does not waive the requirement by failing to challenge jurisdiction early in the pleadings.

*Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702, 102 S.Ct. 2099, 2104, 72 L.Ed.2d 492 (1982). This court further notes that *DiFrischia* is no longer regarded as the law of the Third Circuit. "We need not decide whether *DiFrischia* is distinguishable, because subsequent decisions of the Supreme Court have made it clear that subject matter jurisdiction can never be created by estoppel, even as a sanction for conduct such as that here or in *DiFrisc-*

*hia.*" *Rubin v. Buckman*, 727 F.2d 71, 72 (3d Cir.1984).

In determining a corporation's principal place of business, this court must look to the "total activity" of the corporation. "This analysis incorporates both the 'place of activities' test (focus on production of sales activities), and the 'nerve center' test (emphasis on the locus of the managerial and policy making functions of the corporation)." *Vareka Investments, N.V. v. American Investment Properties, Inc.*, 724 F.2d 907, 910 (11th Cir.1984).

Since the "business" of a railroad is transportation, it is more difficult to determine a principal place of business than it is in the case of a corporation engaged in manufacturing. Interstate transportation of goods necessarily involves contact with and activity in numerous states because goods must necessarily pass through different states as they move in interstate commerce. Consequently, even though many of the statistics utilized by the plaintiff in this action reflect substantial business activity in the state of Georgia, such activity is not conclusive in determining Seaboard's principal place of business. Although the statistics set out below show greater activity in the state of Georgia than in other states, this can be attributed to the fact that Georgia is more centrally located than is Florida or Kentucky or North Carolina and that, of necessity, more traffic flows through Georgia. Additionally, this court reiterates that it must look not merely at Seaboard's "place of activities" but must look at the "total activity" of the corporation. The following chart[1] setting forth certain statistics for 1983 and distilled by the plaintiff from statistics produced to him by Seaboard is instructive. Although it shows Georgia to be the "winner" in each category, it also reflects the substantial business conducted in the state of Florida.

---

1. Although Seaboard conducts business in several states, this chart is restricted to the five states wherein Seaboard had the most ton-miles of freight.

| | Revenue Earned (000's) | Operating Expenses (000's) | Ton Miles of Freight (000's) | Total Miles Traveled (000's) |
|---|---|---|---|---|
| FL | 385,546 | 329,849 | 9,947,313 | 4,581,961 |
| GA | 456,941 | 417,808 | 15,156,358 | 6,594,516 |
| KY | 340,689 | 307,859 | 10,796,730 | 4,123,585 |
| TN | 297,180 | 263,879 | 10,102,173 | 4,085,548 |
| VA | 96,964 | 87,960 | 3,304,606 | 1,226,778 |

The foregoing statistics must be considered in conjunction with other facts as this court looks at the "total activity" of Seaboard. Seaboard has 4,381.55 miles of track in Florida, more than in any other state; the next closest state is Georgia, which has 3,963.38 miles of track. Of Seaboard's 40,662 hourly employees, 8,837 are employed in Florida; the state with the next highest number of hourly employees is Kentucky, with 7,251. Furthermore, of Seaboard's 315 maintenance and repair vehicles, 73 are located in Florida; the next highest number are located in Alabama, which has 45.

In 1983, 88% of Seaboard's purchases of materials and supplies for use system wide were made by the materials and purchasing department in Jacksonville, Florida. The remaining 12% were made on an emergency basis on the local level, but any emergency purchase in excess of $500 was required to be approved by Jacksonville personnel.

On the date that this complaint was filed, the principal bank accounts of Seaboard were located at Atlantic National Bank of Florida in Jacksonville and the Barnett Bank of Jacksonville.

At the time the complaint was filed in this action, Seaboard's corporate headquarters were located in Jacksonville, and senior corporate officers had their offices there. Furthermore, all corporate records are kept in Jacksonville, and all command decisions made with respect to the day to day operations of Seaboard are made in Jacksonville.

The Vice President of Transportation and the Vice President for Engineering and Maintenance jointly manage the administrative affairs of all of Seaboard's divisions from their offices in Jacksonville. Operating under these two vice presidents are the Chief Transportation Officer, the Director of Operations Planning, the General Road Foreman of Engines, the General Manager of Terminal Station Management, the Assistant Vice President for Car Management, and the Director of Transportation Staff. All of these subordinate officers have their offices located at the Seaboard headquarters building in Jacksonville.

■ Seaboard is a wholly owned subsidiary of CSX Corporation. Although the record does not contain sufficient facts for this court to determine where CSX Corporation has its principal place of business, this court concludes that it is unnecessary to decide where CSX has its principal place of business, since it will not impute CSX Corporation's principal place of business to Seaboard. It is well established that a subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business. Of course, the subsidiary takes the citizenship of the parent when it is not really a "separate entity." "Whether a subsidiary is a separate entity is a question of fact. In making this determination courts consider such matters as the degree of control exercised by the parent, the relationship between parent and subsidiary activities, the membership of the Board of Directors, and the maintenance of separate corporate books." *Burnside v. Sanders Associates, Inc.*, 507 F.Supp. 165, 166–67 (N.D.Tex.1980), *aff'd*, 643 F.2d 389 (5th Cir.1981).

■ In the case *sub judice*, the court finds that Seaboard is in fact a separate entity from CSX Corporation. This conclusion is based upon several facts: CSX and Seaboard have separate, non-interlocking boards of directors; separate books are maintained; and CSX exercises no greater control over the operations of Seaboard than would be expected of a majority shareholder (*i.e.*, CSX may be consulted on certain matters, but it leaves the day to day operations of Seaboard to Seaboard's officers and directors).

For the foregoing reasons, the court finds that under the total activity test Seaboard has its principal place of business in Florida and that diversity jurisdiction is lacking.

The clerk is directed to send this order together with all pleadings filed subsequent to the order of remand to the Court of Appeals for the Eleventh Circuit.