TKI, INC.; Digital One Communication, Inc.; and Charles Stephenson, Plaintiffs,

v.

NICHOLS RESEARCH CORPORATION, Computer Sciences Corporation, Dean Hodge, et al., Defendants.

No. CIV.A. 01–1691N.

United States District Court,
M.D. Alabama,
Northern Division.

March 12, 2002.

Thomas T. Gallion, III, Jamie A. Johnston, Haskett Slaughter Young & Rediker LLC, Montgomery, for TKI, Inc., Digital One Communication, Inc., Charles F. Stephenson, plaintiffs.

Hope T. Stewart, Bradley, Arant, Rose & White, LLP, Birmingham, Charles A. Stewart, III, Bradley Arant Rose & White, LLP, Dean Hodge, Montgomery, for Nichols Research Corporation, Computer Sciences Corporation, Dean Hodge, defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Remand (Doc. # 3), filed by the Plaintiffs, TKI, Inc., Digital One Communication, Inc., and Charles Stephenson ("Stephenson") (collectively "the Plaintiffs"), and two Motions and an Amended Motion for Attorneys' Fees (Doc # 's 4, 7, 9) filed by the Plaintiffs and Defendants Nichols Research Corporation ("NRC") and Computer Sciences Corporation ("CSC")(collectively "the Defendants"), respectively.

The Plaintiffs originally filed their Complaint in this case in the Circuit Court of Montgomery County, Alabama. In their Complaint, the Plaintiffs bring claims for breach of contract and negligent misrepresentation.

Defendants NRC and CSC filed a Notice of Removal on November 30, 2000, stating that this court had diversity jurisdiction because the only one non-diverse Defendant, Dean Hodge ("Hodge") had been fraudulently joined. The Plaintiffs contested that Hodge had been fraudulently joined, and contended that NRC was also a non-diverse Defendant. On February 13, 2001, this court remanded the case after determining that the defendants had failed to meet their burden to establish fraudulent joinder. Defendants then filed a second Notice of Removal on June 8, 2001. The Plaintiffs filed a Motion to Remand July 2, 2001.

Upon review of the parties' submissions on the Plaintiffs' Motion to Remand, the court concluded that oral argument would be helpful on the issue of the citizenship of NRC. On February 1, 2002, the Defendants filed evidence to supplement their opposition to remand. On February 4, 2002 oral argument was held on the Motion. Because the Plaintiffs had not received the supplemental evidence with sufficient time to review it before the oral argument, the Plaintiffs were given additional time in which to brief their response to that evidence, which they did.

For reasons to be discussed, the Motion to Remand is due to be DENIED and the Motions and Amended Motions for Attorneys' Fees are due to be DENIED.

### II. REMAND STANDARD

Federal courts are courts of limited jurisdiction. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Burns v. Windsor Insurance Co.*, 31 F.3d 1092, 1095 (1994); *Wymbs v. Republican State Executive Committee*, 719 F.2d 1072, 1076 (11th Cir.1983), *cert. denied*, 465 U.S. 1103, 104 S.Ct. 1600, 80 L.Ed.2d 131 (1984). As such, federal courts only have the power to

hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Kokkonen*, 511 U.S. at 377, 114 S.Ct. 1673. Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear. *See Burns*, 31 F.3d at 1095. Federal court remand orders under 28 U.S.C. 1447(c) are generally not subject to judicial review or reconsideration. *See Harris v. Blue Cross/Blue Shield*, 951 F.2d 325, 330 (11th Cir.1992). A party can only remove a previously unremovable case in very limited circumstances. *See* 28 U.S.C. § 1446(b).

### III. FACTS

The facts, as they pertain to the Motion to Remand, are as follows:

The Plaintiffs are all citizens of the State of Alabama. Defendant CSC is a corporation organized under the laws of the State of Nevada with its principal place of business in the State of California. Hodge is a citizen of the State of Alabama. NRC is incorporated under the laws of Delaware and the Plaintiffs allege that NRC has its principal place of business in the State of Alabama. The Defendants contend that NRC has its principal place of business in the State of California.

The Defendants asserted previously that Hodge was fraudulently joined by the Plaintiffs. This court found that the Plaintiffs might be able to develop evidence that would establish a claim of misrepresentation against the resident Defendant, Hodge, based on an affidavit of Plaintiff Stephenson, and granted the Plaintiffs' Motion to Remand. After the case was remanded to the Circuit Court of Montgomery County, the Defendants removed a second time, again asserting that Hodge was fraudulently joined. In support of their contentions, the Defendants offer the post-remand deposition of Plaintiff Stephenson, in addition to their previously offered evidence submitted in the first removal. The Plaintiffs continue to rely on the affidavit and deposition testimony of Stephenson and assert that this court cannot revisit its remand order based on the Defendants' allegedly new evidence.

### IV. DISCUSSION

This case presents several distinct issues. The first is whether this court can consider a second removal of this case based on new evidence offered by the Defendants to support the removal of the action. The second is, if this court does consider the second removal, whether the new evidence, coupled with the previous evidence, sufficiently establishes the court's subject matter jurisdiction. Third, is the issue of the principal place of business of NRC. Finally all parties have requested attorneys' fees. The court will address each of these issues in turn.

#### A. Second Notice of Removal Pursuant to 28 U.S.C. § 1446(b)

The Defendants assert that 28 U.S.C. § 1446(b) allows a district court to consider a second removal of a case which was previously remanded by the court. This is despite 28 U.S.C. § 1447(d)'s apparent bar to appeal or review of a district court's remand order.

"Unquestionably, [§ 1447(d) ] not only forecloses appellate review, but also bars reconsideration . . . by the district court [of its own remand order]." *Harris v. Blue Cross/Blue Shield*, 951 F.2d 325, 330 (11th Cir.1992). The First Circuit has stated, "(t)he district court has one shot, right or wrong." *In re La Providencia Dev. Corp.*, 406 F.2d 251, 253 (1st Cir. 1969). Standing alone, § 1447(d) is clear: on any remand issued pursuant to § 1447(c), the district court cannot reconsider its own remand order. If § 1446(b)

is to allow the district court to consider a second removal, it must not conflict with § 1447(d).

Section 1446 is entitled "Procedure for Removal" and is listed prior to § 1447, which is entitled "Procedure after Removal." Section 1446(b) deals with the time for filing the Notice of Removal. It states:

> (b) The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.
>
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.
>
> 28 U.S.C. § 1446(b)

The Defendants assert that the second paragraph of § 1446(b) contemplates a situation where a second removal would be proper. On its face, the statute does not address this. The second paragraph must be read in conjunction with the first paragraph of § 1446(b). In that sense, the second portion of § 1446(b) provides an avenue for avoiding the strict thirty day time limit imposed by the first paragraph of § 1446(b). In enacting the second paragraph, Congress commented:

> The second paragraph of the amendment to subsection (b) is intended to make clear that the right of removal may be exercised at a later stage of the case if the initial pleading does not state a removable case but its removability is subsequently disclosed. This is declaratory of the existing rule laid down by the decisions. (See for example, *Powers v. Chesapeake etc., Ry. Co.,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673.).
>
> 16 Moore's Federal Practice, ¶ 107 App.02[2] (3d ed.2001)(quoting H.R.Rep. No. 352, 81st Cong., 1st Sess. (1949)).

This statement clearly supports the premise that if the initial pleading on its face is not removable, but later becomes removable, then the second paragraph of § 1446(b) would allow removal. It does not seem to resolve the issue of whether § 1446(b) applies to a case that has already been removed and remanded, but the early Supreme Court cases mentioned in the legislative history support the proposition that the statute can be used for re-removals. *See Powers v. Chesapeake & Ohio Ry. Co.,* 169 U.S. 92, 102, 18 S.Ct. 264, 42 L.Ed. 673 (1898)(subsequent pleadings or conduct may lead to second removal).

This does not mean that § 1446(b) can be used every time the defendant receives any new evidence. Section 1446(b) can allow a second removal, but the statute indicates that this should only be in limited circumstances. Section 1446(b) states "... after *receipt by the defendant,* through service or otherwise, ... from which it may *first be ascertained* that the case is one which is or has become removable, ...." 28 U.S.C. § 1446(emphasis added). The plain language of the statute is that there must be *receipt* by the defendant of something, from which the defendant *first* may ascertain that the case is removable. Proper ways to use § 1446(b) include the situation

where a plaintiff voluntarily dismisses a resident defendant prior to the one year limit, or the plaintiff amends the complaint to assert a federal cause of action. *See Nicholson v. National Accounts, Inc.*, 106 F.Supp.2d 1269, 1271 (S.D.Ala.2000). Re-removal is not proper where defendant simply supplies evidentiary support that the first remand was incorrect. *See Collins v. Fingerhut Cos.*, 117 F.Supp.2d 1283, 1284–85 (S.D.Ala.2000). A second removal based on the same ground as the first does not reinvest the court with jurisdiction. *Seedman v. United States District Court For the Central District of California*, 837 F.2d 413, 414 (9th Cir.1988).

In support of their argument, the Defendants ask the court to consider *SWS Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir.1996). *SWS* was a diversity case in which the amount in controversy was the central removal issue. The plaintiff did not allege any dollar amount in the complaint. *SWS*, 72 F.3d at 491. Defendants removed on a diversity of citizenship basis, but were remanded due to an improper venue choice. *Id.* at 491. They then removed the case again, after plaintiff stated in a deposition that actual damages were seventy to eighty thousand dollars, which at that time, exceeded the jurisdictional amount. *Id.* at 491. Since both of defendants' removals were based on diversity jurisdiction, the Fifth Circuit analyzed the case in terms of removals based on the same ground. The court concluded that where the defendant alleges a new factual basis even under the same theory as before, a second removal is possible. *Id.* at 493.

Similarly in *Benson v. SI Handling Systems, Inc.*, 188 F.3d 780 (7th Cir.1999), the Seventh Circuit held that there had been a significant change in facts to warrant a different ground for removal. Again, the issue was the amount in controversy. *Benson*, 188 F.3d at 781. The defendants'

first removal was remanded for lack of the requisite amount in controversy. *Id.* at 781. After remand, the plaintiff admitted in discovery that there were more than seventy-five thousand dollars in damages. *Id.* at 781 After concluding that § 1447(d) did not bar their review, the Seventh Circuit addressed the issue as to whether § 1446(b) barred successive removals. The court concluded that it did not. *Id.* at 782.

In support of their Motion to Remand, the Plaintiffs cite *Nicholson v. National Accounts, Inc.*, 106 F.Supp.2d 1269 (S.D.Ala.2000), as evidence of the standard within this circuit. The court in *Nicholson* was concerned that § 1447(d) precludes review of the district court's remand order. *Nicholson*, 106 F.Supp.2d at 1271. The court held that a second notice of removal is allowed where subsequent pleadings or events reveal a new and different basis for removal, but not where a party has attempted to circumvent § 1447(d) by simply adding evidentiary support for the previous argument. *Id.* at 1270, 1271. The Defendants assert that this standard would allow the Plaintiffs to avoid removal by effectively hiding the ball at the early stages of the proceedings. Def. Brief (Doc. # 10) at 7. In reality, the *Nicholson* standard does not contradict either *Benson* or *SWS*. Neither case holds that a district court can simply review its previous order based on some additional evidence. The cases do hold that there is some point at which a factual event can fundamentally change the nature of the removal. At that point, the court is reviewing a different removal.

Two recent cases in this district have dealt with related issues. *See Roughton v. Warner–Lambert Co.*, No. 01–D–865–N, 2001 WL 910408 (M.D. Ala. Aug 2, 2001); *Moates v. Cargill, Inc.*, No. 01–D–232–N, 2001 WL 910410 (M.D.Ala. Apr.3, 2001).

Under these cases, a court may not reconsider a prior remand order because of additional evidence, such as deposition testimony, which only adds evidentiary support to the previously submitted argument. *See e.g. Moates,* 2001 WL 910410 at *2. While these cases do not address the issue in detail, they apply the same fundamental standard as previously discussed.

■ The application of that standard in this case leads this court to conclude that it can consider the second removal here. This is not simply a case of Defendants finding additional evidence to submit in support of their earlier argument. In this case, the Defendants purport to rely on deposition testimony of a Plaintiff himself, not previously in their possession, which they contend contradicts that Plaintiff's own affidavit evidence which was relied on by the court in granting the initial motion to remand on the basis of a lack of fraudulent joinder. This presents a new factual basis on which to determine the diversity jurisdiction issue, as distinguished from the *Roughton* and *Moates* cases. Under such circumstances, if a Plaintiff has now contradicted the very affidavit which the court relief on in remanding the case, it is appropriate for the Defendants to file a second Notice of Removal. The next issue, therefore, is whether the new evidence upon which the Defendants have relied is sufficient to establish fraudulent joinder.

## B. Fraudulent Joinder

By way of background, the court notes that in its previous opinion ordering a remand in this case, the court concluded that the Plaintiffs' evidence was sufficient to establish for purposes of fraudulent joinder analysis that Hodge did more than merely act as a conduit of erroneous information and, therefore, met the standard of creating the possibility that a state court would find that the Plaintiff had stated a claim for misrepresentation against Hodge.

■ The burden of proving fraudulent joinder rests with the Defendants as the removing parties. *See Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir. 1983), *superceded by statute on other grounds as stated in Georgetown Manor, Inc. v. Ethan Allen, Inc.,* 991 F.2d 1533 (11th Cir.1993). In this case the Defendants must show that there is "no possibility the Plaintiffs could establish a cause of action" against Hodge. *See Triggs v. John Crump Toyota, Inc.,* 154 F.3d 1284, 1287 (11th Cir.1998). A claim of fraudulent joinder must be supported by clear and convincing evidence. *See Parks v. New York Times Co.,* 308 F.2d 474, 478 (5th Cir.1962), *cert. denied,* 376 U.S. 949, 84 S.Ct. 964, 11 L.Ed.2d 969 (1964); *see also Bolling,* 900 F.Supp. at 406. In evaluating whether there has been fraudulent joinder, all allegations and submissions must be viewed in the light most favorable to the plaintiff. *See Crowe v. Coleman,* 113 F.3d 1536, 1538 (11th Cir.1997). In fact, "the district court should resolve all questions of fact and controlling law in favor of the plaintiff. . . ." *Id.*

The Defendants contend that the original remand was based on Stephenson's affidavit and that additional evidence in the form of Stephenson's post-remand deposition contradicted his affidavit. According to the Defendants, the deposition testimony establishes that there is no possibility of recovery against Hodge.

■ In *Crowe,* the Eleventh Circuit explained that, under fraudulent joinder analysis, a plaintiff need not show that he could survive in the district court on a motion for summary judgment. Instead, after drawing all reasonable inferences from the record in favor of plaintiff and resolving all contested issues of fact in favor of the plaintiff, there need only be a

reasonable basis for predicting that state law might impose liability on the facts involved. *Crowe,* 113 F.3d at 1541–42. The court further stated that a district court is to stop short of adjudicating the merits of cases. *Id.* at 1542. In *Crowe,* the Eleventh Circuit found that a conflict in facts between the defendant's affidavit and the plaintiff's sworn complaint and statement of facts was sufficient to establish that there was no fraudulent joinder. *Id.*

The instant case does not present a mere conflict between the Plaintiffs' evidence and the Defendants' evidence, but also a purported conflict between a Plaintiff's own affidavit and deposition. Although the fraudulent joinder standard is not the same as the summary judgment standard, it is a summary-judgment-like process. *See id.* at 1538. Accordingly, the court finds it appropriate to apply the rules governing a conflict between sworn affidavit and deposition testimony in the context of motions for summary judgment.

■ In this circuit, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Assoc., Inc. v. U.S. Industries, Inc.,* 736 F.2d 656, 657 (11th Cir.1984). Therefore, before disregarding an affidavit, a court must find some inherent inconsistency between the affidavit and deposition. *Rollins v. TechSouth, Inc.,* 833 F.2d 1525 (11th Cir.1987). It is the inherent inconsistency which renders the subsequent affidavit a "sham." *See Van T. Junkins and Assoc., Inc.,* 736 F.2d at 657.

Although the deposition testimony in this case was subsequent to the affidavit in question, it appears to the court that the same standard should apply. That is, that the Plaintiffs can only successfully create a question of fact relying on the statement in Stephenson's affidavit if the deposition testimony is not inherently inconsistent with that affidavit, without explanation.

The Plaintiffs argue that Stephenson's deposition testimony is consistent with his affidavit. In his affidavit, Stephenson stated that he reported to Hodge in Montgomery about his activities with the state agencies. Stephenson also stated that Hodge was an employee who "supervised, managed, and agreed with NRC's incentive compensation plan." Stephenson Affidavit. According to the Plaintiffs, nothing in Stephenson's deposition contradicts this statement.

■ The Defendants have pointed to various portions of Stephenson's deposition, including his testimony that Hodge was not his supervisor, did not "control the purse strings" on him, did not hire or fire him, and did not terminate the agreement Stephenson had. Stephenson's Deposition page 137. These statements do not necessarily directly contradict Stephenson's affidavit. There is one additional statement, however, which appears to be a direct contradiction. In his deposition, the Plaintiff was asked, "Do you know of any role that Dean Hodge played in the compensation plan you had with Nichols Research?" Stephenson Deposition, page 152: 21–23. The Plaintiff responded, "No. Never knew it, never wanted to know it, never any of my business." *Id.* at 153: 1–2. This statement in deposition appears to say that Stephenson does not have personal knowledge of any role Hodge played in Stephenson's compensation plan.

Not only does this statement create an unexplained conflict with the affidavit provided by Stephenson, it undermines the very validity of statements in the affidavit because those statements were not based on personal knowledge. *See* Fed. R. Civ.

Pro. 56(e). Without personal knowledge on Stephenson's part, the court cannot accept Stephenson's earlier statement in his affidavit that Hodge supervised, managed, and agreed with the compensation plan. Furthermore, at best, although it is possible that Stephenson's deposition statement could be construed to mean that he did not have any knowledge of the role Hodge played in establishing, rather than supervising or managing, the compensation plan, Hodge's actions in "agreeing" with the plan are the alleged actions at issue. There is apparently no contention by the Plaintiffs that Hodge could be held liable as a mere conduit of erroneous information. In fact, there has never been any contention by the Plaintiffs to dispute Hodge's unequivocal testimony that he never discussed Stephenson's compensation with him, or made any representations about any contract at issue in this case. Hodge Affidavit at ¶¶ 6,8.

The Plaintiffs have alleged a negligent misrepresentation claim in the Complaint. In their brief, the Plaintiffs recite the elements of their claim as being (1) a misrepresentation of a material fact, (2) made willfully to deceive or recklessly without knowledge, (3) acted upon by the opposite parties, and (4) reliance by the complaining party which was justifiable under the circumstances. *See* Plaintiffs' Reply Brief, page 11. The theory of misrepresentation on which the Plaintiffs have been proceeding is that Hodge was a participant in the compensation plan given to Stephenson, and so can be held liable for the misrepresentations made to him. Plaintiff's Reply Brief, pages 11–13. This theory necessarily will require proof that Hodge had knowledge of the compensation plan.

The Defendants have provided evidence that no representations were ever made by Hodge, and that he played no role in the compensation plan. The Plaintiffs attempted to, and initially did, create an issue as to Hodge's role through Stephenson's affidavit. Upon re-removal, however, it is clear that Stephenson did not have personal knowledge of the statement he made regarding Hodge's role in the compensation plan.

This court is not persuaded to find, as the Plaintiffs urge, that the fraudulent joinder standard analysis must take into account the possibility that a claim can be established against Hodge if additional discovery is undertaken. This court has been presented with absolutely no evidence from which to conclude that Hodge played any role in Stephenson's compensation plan. The only evidentiary basis which might have supported a conclusion that additional evidence would bear out a claim against Hodge has been undermined by Stephenson's own deposition. The Plaintiffs have had well over a year since the original filing of the Complaint in October 2000 to develop evidence in this regard, and have failed to present any evidence to this court. It appears clear to the court that, if a legitimate basis existed for Stephenson's affidavit statement in question, evidence of such would have been submitted in support of the Motion to Remand. Furthermore, this court is not persuaded that the fraudulent joinder standard can be satisfied with the argument that another defendant could be substituted for Hodge, because this court has no way of knowing whether such a substituted defendant would be of non-diverse citizenship. This is not to say that an attempt by Hodge to later amend his Complaint to add such a party will necessarily be precluded.

Accordingly, this court concludes that the new evidence received by the Defendants is sufficient to establish, even under the very high burden imposed in fraudulent joinder cases, that there is no possibility that a state court would find that the

Plaintiffs have a negligent misrepresentation claim against Hodge.

The Plaintiffs have repeatedly stated that they need not address their breach of contract claim, but that they do not concede that no breach of contract claim can be brought against Hodge in this case. Without evidence to establish that any rule other then the general rule governing agents and breach of contract claims should be applied in this case, this court must conclude that there is no possibility that a state court could find that the Plaintiffs have a claim against Hodge, who is an agent, for breach of contract. *See Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.*, 551 So.2d 283, 285 (Ala.1989)(agent of insurance company is not a party to the insurance contract).

Accordingly, the court concludes that Hodge has been fraudulently joined and is due to be DISMISSED as a party in this case.

### C. Citizenship of NRC

Having concluded that Hodge has been fraudulently joined, this court must now address the Plaintiffs' argument that complete diversity does not exist because NRC is a citizen of Alabama. The Plaintiffs concede that NRC is a Delaware corporation. Complaint at ¶ 4. The Plaintiffs also allege in the Complaint, however, that NRC's principal place of business is Alabama. The Defendants, on the other hand, contend that NRC's principal place of business is not in Alabama, but in California.

■ A corporation's principal place of business is determined by looking at the "total activities" of the corporation. *Bel–Bel Intern'l Corp. v. Community Bank & Homestead*, 162 F.3d 1101 (11th Cir.1998). This test incorporates both the "place of activities" and the "nerve center" tests. *Toms v. Country Quality Meats, Inc.*, 610 F.2d 313, 315 (5th Cir.1980). The "nerve center" test places general emphasis on the locus of the managerial and policymaking functions of the corporation. *Id.* at n. 6. The "place of activities" test focuses on production or sales activities. *Id.* The Defendants, as the removing parties, bear the burden of establishing federal jurisdiction.

■ The "nerve center" test is applied when a corporation has varied activities which are carried on in different states. In such situations, the nerve center, or corporate offices, will be the principal place of business at which a corporation does business; the corporation's activities are dispersed to the point that no place in which the corporation conducts operations or activities is principal. *Id.* When a corporation has its executive offices in one state and its physical operation wholly or predominantly in another state, the principal place of business is the state where the physical operations are conducted. *Kelly v. United States Steel Corp.*, 284 F.2d 850 (3rd Cir.1960).

The Plaintiffs point to the Consulting Services Agreement entered into by NRC and the Plaintiffs which states that NRC is organized under the laws of Delaware and has its office and principal place of business in Huntsville, Alabama. *See* Exhibit F. The Plaintiffs also state that NRC's website states that it is headquartered in Huntsville, Alabama. The Plaintiffs also point to July 1, 1999 and November 1999 press releases and a February 1997 article still being released by NRC at the time of the filing of the Plaintiffs' Complaint which state that NRC has its principal place of business in Huntsville, Alabama. The Plaintiffs further point to the 1998 Annual Report of NRC which states that "founding headquarters remain in Huntsville, Alabama." *See* Exhibit T. The Plaintiffs also state that the Welcome Video indicates that Huntsville, Alabama is corporate headquarters. Finally, the Plaintiff point

out that invoices to Stephenson were paid through the Huntsville office.

The Defendants first state that the Plaintiffs' evidence is insufficient to establish that NRC's principal place of business prior to time that the complaint was filed was in Alabama. When asked at oral argument on this matter whether the Defendants conceded that Alabama was at one time the principal place of business of NRC, the Defendants stated that an argument could be made that the principal place of business was not Alabama, but then stated that the nerve center of NRC was once in Huntsville, Alabama.

 Even assuming that NRC at one time had its principal place of business in Huntsville, Alabama, the Defendants further argue that at the time the Complaint was filed in this case and the case was removed, there had been a change in NRC's corporate control. Defendants' Brief in Opposition to Remand, page 16. In their brief, the Defendants state that NRC merged with CSC and transferred control to CSC. Citizenship of a merged corporation is determined by the principal place of business of the survivor corporation. *El Chico Restaurants, Inc. v. Aetna Cas. and Sur. Co.*, 980 F.Supp. 1474, 1482 (S.D.Ga.1997). The evidence presented by the Defendants, however, does not support a description of NRC's status as having been "merged" into CSC.

 According to Hayward D. Fisk, Vice President and Secretary of CSC and NRC, CSC is the "ultimate parent corporation of NRC." Affidavit of Fisk at ¶5. The merger which occurred was a merger by which NRC "merged with and into a subsidiary of CSC ...." Scherer Affidavit at ¶2. At oral argument, counsel for the Defendants clarified that while NRC ultimately merged into CSC in March of 2001, on November 16, 1999, NRC merged into a subsidiary of CSC and became the surviving corporation. It was not until March

2001 that the new NRC entity merged into CSC. Therefore, the analysis guiding this inquiry is based on NRC's status as a subsidiary, not as a corporation merged into CSC.

 A subsidiary corporation which is incorporated as a separate entity from its parent corporation is considered to have its own principal place of business. *Fitzgerald v. Seaboard System Railroad, Inc.*, 647 F.Supp. 205 (S.D.Ga.1985). This court will, therefore, analyze the Defendants' evidence to determine whether they have met their burden of establishing that NRC's principal place of business is not Alabama.

The Defendants maintain that NRC's principal place of business is in California. In addition to the evidence originally filed in support of this contention, the Defendants have also filed supplemental exhibits A–D to the Affidavit of Larry Goodman, the Assistant Treasurer of CSC. Various supplemental exhibits are tax returns which reflect an El Segundo, California mailing address. Exhibit A is a tax return reflecting a mailing address for NRC in California. Exhibit A–2 is a corporation franchise tax return for the year beginning 11/16/99 and ending 03/31/00 which reflects the California address; A–4 is a corporate income and franchise tax return for the State of Mississippi for the year beginning 11/16/99 and ending 03/31/00 which reflects the California address; and A–7 is a corporation tax return for the State of North Carolina for the year beginning 11/16/99 and ending 03/31/00 which lists the El Segundo, California address. As the Plaintiffs point out, the filing dates for these income tax forms is December 12, 2000, so an argument could be made that the mailing address on that date might not be reflective of the mailing address on the date the Complaint was filed, October 27, 2000.

Supplemental Exhibit B is an "Alabama Business Privilege Tax Return, Corporate Shares Tax Return, and Annual Report," which states on its face that it is required to be completed and returned prior to March 15, 2000. This form lists the mailing address of NRC as the El Segundo, California address. Exhibit B also lists the addresses of the President and Secretary of NRC as being in El Segundo, California. The most significant statement on the form, for purposes of the instant motion, occurs where NRC was asked to list its "Principal office and place of business if outside State of Alabama." NRC made an entry, indicating that its principal place of business is indeed outside of Alabama. This entry lists the El Segundo, California address.

Supplemental Exhibits C and C–1 are a "State of Delaware 2000 Annual Franchise Tax Report" which list the president, vice-president and treasurer, vice-president and secretary, vice-president of finance, two assistant treasurers, and two officers as having addresses in California. Although they reflect year 2000 information, Exhibits C and C–1 do appear to be have been filed in February 2001.

Supplemental Exhibit D is a "Statement by a Foreign Corporation" filed in the State of California and dated September 18, 2000. Supplemental Exhibit D appears to be quite probative of the inquiry in this case as it is a form filed with the State of California which is intended to indicate when there has been a change in the information regarding the corporation's addresses and chief officers' addresses. The form contains a preprinted label addressed to NRC at the Alabama address. Immediately following this preprinted name, there is a box and text which provides that the box should be checked if there has been no change in the information contained in the last statement by a foreign corporation on file with the California Secretary of State.

The box is not checked. In the following 6 lines of the form, the form requests the principal executive office address, business office address, mailing address, and addresses of the chief executive officer, secretary, and chief financial officer of NRC. All of these addresses are listed as being El Segundo, California. According to this form, therefore, even if some or all of addresses requested were formerly Alabama addresses, as of September 18, 2000, the principal executive office, the business office, the mailing address, and the addresses of the chief executive officer, secretary, and chief financial officer were all El Segundo, California.

The Defendants originally provided evidence that three out of four of NRC's directors reside in California, six out of NRC's eleven officers reside in California, and "many major corporate managerial and business policy decisions" are made in California, including the election of NRC's officers and directors. *See* Hayward Fisk Affidavits, Exhibit G. The Defendants also present evidence that NRC's payroll and accounting functions are conducted in CSC's offices in Sterling, Virginia and Boston, Massachusetts. *Id.* Hayward Fisk also states that officers and directors are elected in California. The Plaintiffs dispute that this evidence establishes that any particular actions had occurred as of October 27, 2000. The court agrees that Hayward Fisk's affidavit attesting to these activities is dated November 30, 2000, but his November affidavit is at least evidence that these activities of NRC were no longer occurring within Alabama within a month of the filing of the Complaint. Furthermore, other documentary evidence indicates that the terms of the listed directors and officers of NRC end in August of 2001. *See* Supplemental Exhibit C–1. As it seems unlikely that these terms would be for nine months, it appears that, at least with respect to the directors and

officers whose terms are listed in supplemental Exhibit C–1, Hayward Fisk's affidavit is evidence that those officers and directors had California addresses as of October 2000. Hayward Fisk's second affidavit also states that in October 2000, NRC had four open bank accounts and had mailed letters closing three accounts in Alabama. *Id.*

The Defendants also provide evidence from Laura Rau that she had formerly been employed by NRC, but on the date the Complaint was filed in this case she was employed with CSC as a Senior Contracts Manager–CSC Defense Group Army with her office in Huntsville, Alabama. Laura Rau states that in carrying out her duties, she followed "CSC's policies and procedures for reviews of defined contract actions, including required reviews by" the Director of Contracts, CSC Defense Group, whose office is located in Falls Church, Virginia. Exhibit F, pages 1–2. Laura Rau's affidavit, therefore, establishes that although she was working in the NRC Huntsville office when the Complaint was filed, she was employed by CSC on that date and her work was reviewed in accordance with CSC policy by a person outside of the State of Alabama.

The evidence that NRC is headquartered in Huntsville that is presented by the Plaintiffs comes primarily from NRC's own website. As the Defendants explain, however, while NRC may have been headquartered in Huntsville at the time that the consulting agreements were entered into with the Plaintiffs, NRC subsequently became a subsidiary of CSC and ultimately merged into CSC. According to the Defendants, when NRC became a subsidiary of CSC, the headquarters of NRC moved to California. The documentary evidence described above, particularly supplemental Exhibit D, supports this explanation. The Defendants also explain that the reason the NRC website reflected that the head-

quarters were still in Huntsville was that the website has not been updated since February 11, 2000, when the person responsible for editing NRC's internet website was transferred. *See* Exhibit H.

▮ The rule generally applied among federal courts is that a party does not have to prove the exact location of a corporation's principal place of business if the party can show that none of the possibilities for the corporation's principal place of business would destroy diversity of citizenship. *See Amoco Rocmount Co. v. Anschutz Corp.,* 7 F.3d 909, 916 n. 3 (10th Cir.1993); *Harris v. Black Clawson Co.,* 961 F.2d 547 (5th Cir.1992)("Because Plaintiffs below are all citizens of Louisiana, it is sufficient for us to determine that FB & DCC's principal place of business is not in Louisiana."); *but see Media Duplication Services, Ltd. v. HDG Software, Inc.,* 928 F.2d 1228 (1st Cir.1991). "If it can be shown, for example, that the principal place of business is one of two states, and the opposing party is not a citizen of either of them, jurisdiction will be upheld." Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure:* Jurisdiction 2d § 3625. The Eleventh Circuit has not explicitly adopted this rule, although it has acknowledged a district court case from another jurisdiction which applied it. *Cabalceta v. Standard Fruit Co.,* 883 F.2d 1553, 1560 (11th Cir.1989)(stating the issue in of *Steinbock–Sinclair v. Amoco Int'l Oil Co.,* 401 F.Supp. 19 (N.D.Ill.1975) as being "whether or not the defendant has its principal place of business in Illinois."). A district court within this circuit has also applied the rule. *See El Chico Restaurants, Inc.,* 980 F.Supp. at 1482 ("the Court need only decide that its principal place of business is in a state other than Georgia"). The court will, therefore, examine the Defendants' evidence to determine whether they

have met their burden of establishing that at the time the Complaint was filed, NRC's principal place of business was not in Alabama.

The former Fifth Circuit has stated that it is significant, although not determinative, that income tax forms list the return address of a parent entity. *See Toms v. Country Quality Meats, Inc.,* 610 F.2d 313, 315 (5th Cir.1980). In determining citizenship, the former Fifth Circuit also found significant the place in which accounting functions were performed, including the computation of payroll checks; where major business policy decisions were made; which entity supplied and approved managerial personnel; and where insurance policies were purchased. *Id.* at 315–16.

Relying on these and all other factors which bear on the inquiry in this case, and with the unrefuted evidence that contrary information from the Defendants' website is outdated, the court concludes that while the Defendants' evidence does not establish that all of the relevant activities pointed to occurred in California, the evidence does support a finding that those activities did not occur in Alabama. All of the evidence pointed to by the Defendants clearly indicates that while NRC's principal place of business was once in Alabama, it no longer is. The only question, then, is whether the Defendants have sufficiently established that the transformation of NRC from a corporation with a principal place of business in Alabama to a corporation with a principal place of business in California was complete at the time the Complaint was filed in this case on October 27, 2000.

As stated above, filings by NRC reflect that as of March 2000, the return address for NRC was in California, and that NRC listed its principal place of business as being outside of Alabama, in El Segundo, California. Supplemental Exhibit B. A fil-

ing by NRC also indicates that the addresses of the executive offices, the chief executive officer, secretary, and chief financial officer of NRC were in California as of September 2000. Supplemental Exhibit D. Laura Rau has also established that as of the date of the Complaint, she was employed by an entity outside of Alabama, and management review decisions of her work were being made outside of Alabama. There is also evidence that NRC had fewer bank accounts in Alabama as of October 2000.

The evidence before the court relevant to activities occurring in Alabama comes mainly in the form of documents or other information created before NRC's merger with a subsidiary of CSC, and published in various forms after the merger with the subsidiary of CSC was accomplished. While it may have been unwise to continue publish information stating that NRC's headquarters or principal place of business was in Huntsville when that was no longer true, such lack of wisdom does not establish the principal place of business of NRC. The Defendants have provided sufficient evidence to show that NRC's status as a corporation with a principal place of business in Alabama changed to being a corporation with a principal place of business outside of Alabama, and that this transformation had taken effect on the date that the Complaint was filed in this case. Accordingly, the court must conclude that the Defendants have met their burden of establishing that the principal place of business of NRC at the relevant time was not Alabama.

### D. Attorneys' Fees

Both parties have submitted Motions for Attorneys' Fees to recover the expenses for this second removal. The court has the authority to assess attorneys' fees in this situation. *See* 28 U.S.C. § 1447(c). Although the court finds that the Motion

to Remand is due to be DENIED, the court does not conclude that the facts of this case present a situation where attorneys' fees are due to be awarded. Accordingly, both Motions for Attorneys' Fees are due to be DENIED.

## V. CONCLUSION

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion to Remand (Doc. # 3) is DENIED.

2. Defendant Dean Hodge is DISMISSED as a party in this case.

3. The Motions for Attorneys' Fees (Doc. # 's 4, 7, 9) are DENIED.

4. The Defendants' Motion to Amend Answer (Doc. # 13) is GRANTED; however, the amendment attached to the motion does not comply with Local Rule 15.1. Defendants are given **until March 22, 2002** to file their First Amended Answer and Counterclaim in appropriate form.